UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EX REL. PATRICIA
HOWARD,

    Qui Tam Plaintiff,
v.                               Case No.  8:06-cv-27-T-33MAP

USA ENVIRONMENTAL, INC.,

    Defendant.
_____/

## **ORDER**

    This cause comes before the Court pursuant to Defendant's motion to dismiss Relator's complaint (Doc. # 10), which was filed on August 29, 2008.  On September 15, 2008, Relator filed a response in opposition to the motion to dismiss. (Doc. # 11).  On October 21, 2008, this Court referred the motion to dismiss to the Honorable Mark A. Pizzo, United States Magistrate Judge, for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. # 12).  Thereafter, on December 3, 2008, Judge Pizzo entered his report and recommendation (Doc. # 13), in which he recommended that the motion to dismiss be granted in part and denied in part.

    Both Relator and Defendant filed an objection to Judge Pizzo's report and recommendation, and both objections are ripe for this Court's review.  (Doc. ## 19, 21, 28, 30).

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732 (11th Cir. 1982), <u>cert.</u> <u>denied</u>, 459 U.S. 1112 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n. 9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. <u>See Cooper-Houston v. S. Ry. Co.</u>, 37 F.3d 603, 604 (11th Cir. 1994); <u>Castro Bobadilla v. Reno</u>, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), <u>aff'd</u>, 28 F.3d 116 (11th Cir. 1994) (Table).

After conducting a careful and complete review of the findings, conclusions and recommendations, and giving <u>de</u> <u>novo</u> review to matters of law, the Court accepts and adopts the factual findings and legal conclusions of the magistrate judge with modification, as outlined below.

## I. Background

As this matter comes before the Court on a motion to dismiss, the Court relies on Relator's complaint (Doc. # 1) for the relevant facts.

Patricia Howard ("Relator") was employed by USA Environmental, Inc. ("Defendant") from December 2003, until February 2005. (Id. at 4). Defendant received an Army contract to dispose of unexploded weaponry in Iraq. (Id. at 1). Relator worked as an ammunition handler, and later as an ammunition supervisor, for Defendant. (Id.). Relator contends that Defendant "willfully" failed to comply with and "ignored" certain health and safety requirements for Defendant's employees under the Army contract. (Id.).

Under Defendant's Army contract, Defendant was responsible for destroying 200 tons of enemy ammunition in Iraq, every two days. (Id. at 3, 5). The ammunition was not hand-delivered to Defendant by the enemy. Rather, the ammunition was located in bombed bunkers and warehouses. (Id. at 3). These ammunition points were not pleasant, they were filled with birds (dead and live) as well as bird feces. (Id. at 5).

Relator asserts that Defendant failed to provide "proper personnel protective equipment" including masks, jump-suits,

and respirators for employees working among the bird matter. (Id. at 6). Understandably, Relator was not happy with her working conditions. She was paid $29 per hour, and she asserts that Defendant billed her work to the Army at $52 per hour. (Id. at 5).

Relator asserts, "on information and belief," that "many injuries to employees were not reported to the Army." (Id. at 7). She contends that Defendant's attempts to cure the safety hazards, such as the implementation of a "Airborne Animal Waste Control Plan" and the hiring of a "Safety Officer," were an ineffective "sham." (Id. at 7-8).

Relator attended a "Safety Meeting" on February 21, 2005, where she complained that the bird excrement was a danger to Defendant's employees. (Id. at 8). According to Relator, representatives of Defendant explained at the same meeting that the bird excrement was not dangerous, except to individuals with AIDS. (Id. at 8-9). At the end of the meeting, Relator provided Defendant's representatives with additional information, including websites, about "contract health and safety requirements." (Id. at 9).

Another safety meeting was held the very next day, on February 22, 2005, where Defendant's "Depot Manager" Ron Teierle stated that "certain people" were complaining about

issues "that didn't matter." (Id.). He "glared" at Relator and made it "obvious to everyone present" that he was talking about Relator. (Id.). Relator fired back at him by remarking that "the contract's health and safety requirements were being violated, but he wasn't doing anything to correct it." (Id. at 10). The Depot Manager told Relator to "shut the hell up" and that there would not be any problems if Relator "didn't question it." (Id.). Further, he stated "we don't need you causing problems for us." (Id.). Then, the Safety Officer for Defendant "lunged and jabbed" at Relator, exclaiming: "we'll all lose our jobs – you're going to get us all unemployed." (Id.). The Safety Officer then instructed the Depot Manager to send Relator away from the warehouses. (Id.).

Relator reports that after the meeting, Defendant provided its workers with some additional safety equipment, such as washing stations, jump-suits, and masks. (Id.). However, Relator also alleges that an unidentified "English-speaking Kurd" told her to "watch her back." Two days later, Relator tendered her resignation letter. (Id. at 11). She requested to be immediately returned to the United States, and Defendant complied. (Id. at 12).

Thereafter, on June 5, 2006, Relator filed her complaint, under seal. (Doc. # 1). Relator's complaint contains four

-5-

counts. In count one, Relator asserts that Defendant violated the False Claims Act, 31 U.S.C. § 3729(a)(1) ("FCA"), by submitting for payment false claims to the Government. In count two, Relator asserts that Defendant made false statements to get a false claim paid by the Government, in violation of Section 3729(a)(2) of the FCA. In count three, Relator asserts Defendant violated the retaliation provision of the FCA contained in Section 3730(h). In count four, Relator asserts that Defendant retaliated against her in violation of state law because she "threatened to disclose, to a supervisor or to a public body, an activity, policy, or practice that Defendant was in violation of law, rule or regulation." (Doc. # 1 at 21).

On July 3, 2008, over two years after Relator filed her complaint, the United States filed its "Notice of Election to Decline Intervention." (Doc. # 2). Thereafter, on July 14, 2008, this Court entered an Order unsealing the complaint, directing service of the complaint on Defendant, and advising that "should the relator or the defendant propose that this action be dismissed, settled, or otherwise discontinued, the Court will solicit the written consent of the United States before ruling or granting its approval." (Doc. # 3 at 2).

On August 29, 2008, Defendant filed a motion to dismiss Relator's complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 10). After Relator filed her response in opposition to the motion to dismiss (Doc. # 11), this Court referred the matter to Judge Pizzo for a report and recommendation.

## II. Report and Recommendation

On December 3, 2007, Judge Pizzo filed his thoughtful and well-crafted report and recommendation. (Doc. # 13). Judge Pizzo recommends that the motion to dismiss be granted as to counts one, two, and four and denied as to count three.[1]

### A. Counts One and Two

Judge Pizzo determined that Relator's FCA claims as asserted in counts one and two were due to be dismissed pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. This Court agrees. As explained by Judge Pizzo:

> [T]o satisfy 9(b)'s demands the complaint must set forth (1) precisely what statements were made in what documents or oral representations or what

---

[1] Judge Pizzo did not specifically recommend that counts one and two be dismissed with prejudice; however, he did comment that attempts to amend counts one and two would be futile: "I find that nothing in [the] four corners [of the complaint] indicates that she, via an amended complaint, could cure the Rule 9(b) deficiencies." (Doc. # 13 at 16).

> omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. Clausen [v. Lab. Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002)] citing Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)(quotations omitted). "[T]he whistle must be blown not only loudly, but with Rule 9(b) particularity in the complaint before the courts will listen." United States ex rel. Adkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006).

(Doc. # 13 at 7).

In the present case, Relator's complaint focused on alleged health and safety violations and failed to include a single specific allegation regarding Defendant submitting a false claim to the Government. See Mitchell v. Beverly Enterprises, Inc., 248 F. App'x 73 (11th Cir. 2007)(dismissing relator's complaint despite relator's description of defendant's illegal policies because relator failed to make specific allegations about false claims actually being submitted to Medicare); United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006)(dismissing relator's complaint because it failed to allege that defendants actually submitted reimbursement for the services described); Corsello v. Lincare, Inc., 428 F.3d 1008 (11th Cir. 2005)(explaining that a FCA plaintiff must provide not

only the "who, "what," "where," "when," and "how" of improper practices, but also the "who," "what," "where," "when," and "how" of fraudulent submissions to the government).

Relator's allegations that Defendant submitted false statements to the government, based on information and belief, are woefully inadequate, and her complaint cannot survive Defendant's motion to dismiss. As aptly stated by Judge Pizzo, "[T]he complaint does no more than guess that false claims were filed suggesting or certifying that the health and safety provisions were adhered to." (Doc. # 13 at 9).

In her objection to Judge Pizzo's report and recommendation and response to Defendant's objection, Relator attempts to provide the specifics of the alleged false claims and false statements made to garner payment of false claims to the Government. However, Relator's arguments are unavailing. In her objection, Relator recasts her complaint that Defendant failed to perform some of its duties under its contract with the Army. Relator indicates:

> There is no indication whatsoever--either in the pleadings or outside of the pleadings--that the Defendant somehow was working in Iraq for free. It simply defies logic to suggest that the Defendant, who openly and admittedly failed to comply with the Contract, did not then invoice the Government. . . .It should be noted that Relator worked on a U.S. Government site in a war zone . . . rendering it all the more likely that Defendant did indeed

>     invoice for its services and did not perform the
>     work for free.

(Doc. # 21 at 4).

Relator's remark that Defendant did not perform its work for free underscores the flaw in Relator's position. It is certain that Defendant billed the Government for its contract work regarding ammunition; however, this is no basis for a FCA complaint. Relator does not allege that Defendant actually submitted a false claim to the Government, instead, she contends that Defendant failed to comply with some of the safety provisions in the contract.

This Court "cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the true essence of fraud of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme." <u>Clausen</u>, 290 F.3d at 1312 n.21. Thus, a relator's FCA complaint cannot survive if its core allegations--those surrounding the submission of false claims to the Government--are contingent upon barren assumptions.

This Court overrules Relator's objections to the Report and Recommendation and determines that counts one and two should be dismissed with prejudice.

**B.     Counts Three and Four**

As noted above, counts three and four seek damages for retaliation. Judge Pizzo recommended that the motion to dismiss be denied as to count three and granted as to count four. Defendant objects to Judge Pizzo's recommendation that Relator's FCA retaliation claim as asserted in count three be permitted to stand. Defendant seeks dismissal of the retaliation claim, contending (1) that Relator failed to allege that she engaged in protected activity under the FCA and (2) that Defendant's conduct did not rise to the level of retaliation under the FCA.

Relator, on the other hand, seeks an order allowing her to amend her complaint as to count three.[2] After due consideration and careful review of the report and recommendation, the parties' submissions, and governing law, this Court determines that counts three and four should be dismissed without prejudice.

---

[2] Neither Relator nor Defendant object to Judge Pizzo's recommendation that count four be dismissed, and this court adopts Judge Pizzo's recommendation as to count four. This Court dismisses count four without prejudice.

The FCA contains a section providing protection for "whistleblowers," which provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions or employment because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h). Thus, to state a claim for retaliation under the FCA, a relator must show that (1) the employee engaged in protected conduct under the FCA and (2) the employer retaliated against the employee because of the employee's protected conduct. See Mack v. Augusta-Richmond County, Ga., 365 F. Supp. 2d 1362, 1378 (S.D. Ga. 2005).

Relator resigned from her employment with Defendant two days after the safety meeting. In her resignation letter, Relator noted: "This decision is a direct result of USAE's non-compliance with standard operating procedure for animal

excrement/waste, subsequent contaminant exposure, and personnel response to my February 21st inquiry into such policy." (Doc. # 1 at 11). In count three of her complaint, Relator seeks damages for retaliation, alleging: "For the reasons alleged above, the Qui Tam Plaintiff was an employee who was discharged, suspended, threatened, harassed, and in other manners discriminated against in the terms and conditions of employment by her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a False Claims Act action under this section. This included her investigation for this action." (Doc. # 1 at 19-20).

Commenting on the shortfalls of Relator's retaliation claim, Judge Pizzo's report and recommendation noted, "The Relator's claim for retaliation presents a close call, but I find her allegations raise her right to relief above the speculative level." After due consideration, this Court departs from Judge Pizzo's recommendation as to count three. This Court determines that Relator failed to allege that she engaged in protected conduct under the FCA, and this Court dismisses count three without prejudice.

As stated by the court in <u>Romanosky v. Aggarwal</u>, Case No. 6:03-cv-117-Orl-31KRS, 2005 U.S. Dist. LEXIS 46098, at *30

(M.D. Fla. Feb. 20, 2005), to determine whether an employee engaged in protected conduct under the FCA, courts will consider:

> [w]hether the employee engaged in conduct from which a factfinder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action against it or reporting the employer to the government for fraud. The court will look for evidence that the plaintiff, either by words or actions, communicated to the employer that she believed that the employer had engaged in illegal or fraudulent conduct *involving submission of claims for payment to the government*.

Id. (internal citations omitted) (emphasis added).

The complaint asserts that Relator (1) advised Defendant's representatives that Defendant was not meeting the health and safety requirements of its contract with the Army; (2) provided information, such as websites, to Defendant's representatives regarding Defendant's safety responsibilities to its employees under the contract with the Army; and (3) spoke up at two safety meetings. Absent from the complaint is any indication that Relator did anything beyond trying to get Defendant to comply with the health and safety portion of Defendant's contract with the Army. As correctly stated by Judge Pizzo, "a mere attempt to get a defendant to comply with federal or state regulations is insufficient to establish that a relator engaged in protected conduct." (Doc. # 13 at 14).

When Relator spoke up at the safety meetings, she remarked "that the Depot Manager knew that the contract's health and safety requirements were being violated, but he wasn't doing anything to correct it." (Doc. # 1 at 10). She also questioned the Depot Manager's qualification (asking whether he was a "doctor, i.e., someone who could make [a] judgment [about the health risks associated with bird excrement])." (Id.).

These allegations are insufficient. Under the FCA, an employee "must express concern about suspected 'fraud' or 'illegality' against the government to his company, and not simply general procedural concerns, to satisfy the 'protected activity' prong of the retaliation claim." McKenzie v. Bell S. Telecomms., Inc., 219 F.3d 508, 515 (6th Cir. 2000). This Court determines that the four concerns of the complaint do not support Relator's retaliation claims. She simply complained about Defendant's health and safety violations, and she did not mention fraud. Further, as stated by the court in Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 846-847 (9th Cir. 2002), "An employee is entitled to whistle blower protection only if the employer is aware that the employee is investigating fraud." (Internal quotations

omitted). In this case, the complaint lacks allegations that Defendant was aware that Relator was investigating fraud.

This Court dismisses Relator's retaliation counts--counts three and four--without prejudice. Relator may file an amended complaint as to these counts within eleven days of the date of this Order. If Relator fails to file her amended complaint within eleven days of the date of this order, this Court will dismiss this case with prejudice. Because this case has been pending for several years and is in its infancy from a procedural standpoint, this Court warns Relator that no extensions of time will be granted as to the amendment deadline.

Thus, this Court accepts Judge Pizzo's report and recommendation with the foregoing modifications and grants the motion to dismiss. In the interests of fairness, this Court grants Relator leave to amend counts three and four within eleven days of the date of this order.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. Judge Pizzo's report and recommendation (Doc. # 13) is accepted with modifications.
2. Defendant's motion to dismiss Relator's complaint (Doc. # 10) is granted. Counts one and two of the complaint

are dismissed with prejudice. Counts three and four are dismissed without prejudice.

3. Should Relator be inclined to amend counts three and four of her complaint, she shall do so within eleven days of the date of this order. No extensions of this deadline will be granted.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>19th</u> day of January, 2009.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

All Counsel of Record