UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EX REL. PATRICIA HOWARD,

    Qui Tam Plaintiff,

v.                             Case No. 8:06-cv-27-T-33MAP

USA ENVIRONMENTAL, INC.,

    Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant USA Environmental, Inc.'s motion to dismiss the amended complaint (Doc. # 33), which was filed on February 13, 2009. On March 5, 2009, Patricia Howard, Relator, filed a response in opposition to the motion to dismiss. (Doc. # 38). Also on March 5, 2009, the Government filed its statement of interest in this case. (Doc. # 37).[1] For the reasons that follow, this

---

[1] The Government's statement of interest is limited to the application of the False Claims Act to activities outside of the United States. The Government explains, "Although the United States has declined to intervene in this case, the False Claims Act is 'the Government's primary litigative tool for combating fraud.' . . . Thus, the United States has a strong interest in ensuring how the False Claims Act is interpreted." (Doc. # 37 at 1)(citations omitted). The Government's statement of interest states, "If the Court were inclined to address the extraterritorial effect of the provisions in § 3729(a), which we submit are not at issue in this case, the Government would respectfully request an opportunity to brief that issue." (Id. at 2). This Order does not discuss the extraterritorial effect of the provisions in § 3729(a), and therefore, no further briefing from the Government is necessary.

Court grants the motion to dismiss and dismisses this case with prejudice.

I. **Procedural Background**

On June 5, 2006, Relator filed under seal a qui tam False Claims Act complaint against her former employer, USA Environmental, Inc. (Doc. # 1). Relator's complaint contained four counts. In count one, Relator asserted that Defendant violated the False Claims Act, 31 U.S.C. § 3729(a)(1) ("FCA"), by submitting false claims for payment to the Government. In count two, Relator asserted that Defendant made false statements to get a false claim paid by the Government, in violation of § 3729(a)(2) of the FCA. In count three, Relator asserted that Defendant violated the retaliation provision of the FCA contained in § 3730(h). In count four, Relator asserted that Defendant retaliated against her in violation of state law.

On July 3, 2008, over two years after Relator filed her complaint, the United States filed its "Notice of Election to Decline Intervention." (Doc. # 2). On August 29, 2008, Defendant filed a motion to dismiss Relator's complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 10). This Court referred the motion to dismiss to the Honorable Mark A. Pizzo, United States

Magistrate Judge, for a report and recommendation. Judge Pizzo issued his report and recommendation on December 3, 2008, in which he recommended that the motion to dismiss be granted as to counts one, two, and four of the complaint. (Doc. # 13). Both parties objected to Judge Pizzo's report and recommendation. (Doc. ## 19, 21). On January 19, 2009, this Court entered an order adopting Judge Pizzo's report and recommendation with modifications. (Doc. # 31). After reviewing the complaint, the report and recommendation of the Magistrate Judge, and the parties' submissions, this Court determined that it was appropriate to dismiss counts one and two of the complaint with prejudice and to dismiss counts three and four of the complaint without prejudice. (Doc. # 31).

This Court provided Relator with the opportunity to amend, and Relator timely filed her amended complaint on January 26, 2009. (Doc. # 32). Although this Court dismissed counts one and two with prejudice, Relator's amended complaint contains the same FCA counts as in the original complaint. The amended complaint contains footnotes acknowledging that counts one and two were dismissed with prejudice but noting that it would have been "unwieldy" to omit those counts from the amended complaint. (Doc. # 32 at 19). Furthermore, the

amended complaint contains "count four" for state law retaliation, as in the original complaint; however, Relator has inserted a footnote explaining that she does not seek to reinstate count four. (Doc. # 32 at 22).

In sum, on the face of Relator's amended complaint, it appears that she is seeking relief under the same framework of the original complaint; however, only count three, for FCA retaliation, remains pending.

## II. **Relator's Retaliation Claim**

Relator was employed by Defendant from December 2003, until February 2005. (Doc. # 32 at ¶ 15). Defendant received an Army contract to dispose of unexploded weaponry in Iraq. (Id. at ¶ 1). Relator worked as an ammunition handler, and later as an ammunition supervisor, for Defendant. (Id. at ¶ 15). Relator contends that Defendant "willfully" failed to comply with and "ignored" certain health and safety requirements for Defendant's employees under the Army contract. (Id. at ¶ 1).

Under Defendant's Army contract, Defendant was responsible for destroying enemy ammunition in Iraq. (Id. at ¶¶ 4, 7). The ammunition was located in bombed bunkers and warehouses. (Id. at ¶ 9). These ammunition points were not

pleasant, they were filled with birds (dead and live) as well as bird feces. (Id. at ¶¶ 21, 25).

Relator asserts that Defendant failed to provide "proper personnel protective equipment" including masks, jump-suits, and respirators for employees working among the bird matter. (Id. at ¶¶ 21-24). Relator asserts, "on information and belief," that "many injuries to employees were not reported to the Army." (Id. at ¶ 30). Relator alleges that she "was often reprimanded for questioning the health and safety policies not in use by Defendant[]." (Doc. # 32 at ¶ 32). When Relator complained about the lack of gloves and clean water on site, she "was typically told to 'shut up' and 'get back to work.'" (Id.).

Relator attended a "Safety Meeting" on February 22, 2005, where she complained that the bird excrement was a danger to Defendant's employees. (Id. at ¶ 38). She alleges that representatives of Defendant explained at the same meeting that the bird excrement was not dangerous, except to individuals with AIDS. (Id. at ¶ 49). At the end of the meeting, Relator provided Defendant's representatives with additional information, including websites, about "contract health and safety requirements." (Id. at ¶ 43).

In her amended complaint, Relator contends that she remarked to Defendant's employees that "she had reviewed the contract requirements . . . and that Defendant's failure to comply was bilking the Government out of what they had paid for in the contract." (Id. at ¶ 44). She further commented that "Defendant was certainly making enough money on the contracted work to properly observe the applicable health and safety regulations." (Id.).

In addition, Relator asserts that she "followed up on her concerns regarding contract compliance with Leighton Pharr, an employee of Defendant." (Id. at ¶ 45).

Another safety meeting was held on February 22, 2005, where Defendant's "Depot Manager" Ron Teierle stated that "certain people" were complaining about issues "that didn't matter." (Id. at ¶ 46). He "glared" at Relator and made it "obvious to everyone present" that he was talking about Relator. (Id.). Relator fired back at him by remarking that "the contract's health and safety requirements were being violated, but he wasn't doing anything to correct it." (Id. at ¶ 49). The Depot Manager told Relator to "shut the hell up" and that there would not be any problems if Relator "didn't question it." (Id.). Further, he stated "we don't need you causing problems for us." (Id.). Then, Paul Kent, the Safety

Officer for Defendant "lunged and jabbed" at Relator, exclaiming: "we'll all lose our jobs – you're going to get us all unemployed." (Id. at ¶ 50). The Safety Officer then instructed the Depot Manager to send Relator away from the warehouses. (Id.).

Relator reports that after the meeting, Defendant provided its workers with some additional safety equipment, such as washing stations, jump-suits, and masks. (Id. at ¶ 53). However, Relator also alleges that after the meeting (1) she was denied access to the warehouse site "by her employer to prevent her from gathering any further data or investigating the conditions and changes at the warehouses;" (2) "Ms. Howard's crew's equipment was cleared out of the warehouse where she had previously worked;" (3) "the post with the 'hotline' for reporting Government fraud that had been previously hung in the dining area had been removed;" and (4) an unidentified "English-speaking Kurd" told her that "she was in danger from other Americans." (Id. at ¶¶ 51, 52, 54, 55).

Relator alleges that she feared for her safety, and on February 24, 2005, Relator tendered her resignation letter. (Id. at ¶¶ 58, 59). She requested to be immediately returned to the United States, and Defendant complied. (Id. at ¶ 60).

### A. Defendant's Motion to Dismiss Amended Complaint

On February 13, 2009, Defendant filed its motion to dismiss the amended complaint, and Relator filed her response in opposition on March 5, 2009. (Doc. ## 33, 38). Defendant raises the following arguments in support of dismissal of Relator's remaining retaliation count: (1) that Relator failed to connect any of her allegations with the intentional submission of false claims to the Government; (2) that the amended complaint does not allege that relator engaged in protected activity under the FCA; (3) that Relator's investigation could not have led to a viable FCA action as a matter of law; (4) that the amended complaint does not allege that the Relator was discriminated against because of her conduct; and (5) that the FCA does not regulate the extraterritorial actions of United States citizens. In the alternative to seeking a dismissal of the amended complaint with prejudice, Defendant requests that this Court strike the allegations of the amended complaint that this Court previously dismissed with prejudice (counts one and two) as well as count four, as Relator plainly states that she is not pursuing relief under count four.

Relator, on the other hand, attempts to defend her amended complaint against Defendant's motion; however,

Relator's efforts fail. Relator's opening remark that "upon 'blowing the whistle' as to Defendant's failure to abide by the terms of its contract with the United States, Relator was harassed, threatened, and constructively discharged" (Doc. # 38 at 2) is emblematic of the deficiency of the amended complaint: The amended complaint is not tied to the submission of a false claim for payment to the Government.

This Court entered a detailed order dismissing counts one and two of the original complaint with prejudice but gave Relator a second chance to sufficiently plead a retaliation claim. Relator filed as her amended complaint a slightly modified version of her original complaint (including dismissed counts), and the amended complaint, with the facts as stated therein accepted as true, cannot survive Defendant's motion to dismiss.

B. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)

("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### C. Pleading A FCA Retaliation Claim

The FCA contains a retaliation section providing protection for "whistleblowers," which provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions or employment because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of

> back pay, interest on the back pay, and
> compensation for any special damages sustained as a
> result of the discrimination, including litigation
> costs and reasonable attorneys' fees. An employee
> may bring an action in the appropriate district
> court of the United States for the relief provided
> in this subsection.

31 U.S.C. § 3730(h). Thus, to state a claim for retaliation under the FCA, a relator must show that (1) the employee engaged in protected activity under the FCA and (2) the employer retaliated against the employee because of the employee's protected activity. See Mack v. Augusta-Richmond County, Ga., 365 F. Supp. 2d 1362, 1378 (S.D. Ga. 2005).

Although Defendant asserts a panoply of arguments concerning the amended complaint (including the application of the FCA abroad), this Court dismisses the complaint because Relator fails to allege – and cannot allege under the facts of this case – that she engaged in protected activity under the FCA.

### D. **Protected Activity**

In this case, Relator believed that Defendant failed to comply with health and safety provisions of its contract with the Army, and her actions, which included reading the Government contract and complaining to Defendant's employee's about non-compliance, do not constitute protected activity under the FCA's retaliation standard.

In her response to Defendant's motion to dismiss, Relator points to her remarks that Defendant was "bilking" the Government and that Defendant made enough money on the contract to provide the safety gear; however, these comments are not sufficient to buttress her retaliation claim. (Doc. # at ¶ 44).

As stated by the court in Romanosky v. Aggarwal, Case No. 6:03-cv-117-Orl-31KRS, 2005 U.S. Dist. LEXIS 46098, at *30 (M.D. Fla. Feb. 20, 2005), to determine whether an employee engaged in protected activity under the FCA, courts will consider:

> [w]hether the employee engaged in conduct from which a factfinder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action against it or reporting the employer to the government for fraud. The court will look for evidence that the plaintiff, either by words or actions, communicated to the employer that she believed that the employer had engaged in illegal or fraudulent conduct *involving submission of claims for payment to the government*.

Id. (internal citations omitted) (emphasis added).

Under the FCA, an employee "must express concern about suspected 'fraud' or 'illegality' against the government to his company, and not simply general procedural concerns, to satisfy the 'protected activity' prong of the retaliation

claim." McKenzie v. Bell S. Telecomms., Inc., 219 F.3d 508, 515 (6th Cir. 2000).

In this case, Relator's conduct was not related to suspected fraud on the Government or the submission of a false claim to the Government, and there is no allegation supporting that Defendant was aware that Relator was investigating any such fraud. Further, as pointed out by Defendant, Relator was not in a position to know about any claims which Defendant may have submitted to the Government:

> [Relator] has not alleged – nor can she truthfully do so – that she was investigating (or objecting to) the submission of allegedly false claims to the Government or that [Defendant] was aware she was doing so. This is not surprising. [Relator] was an Ammunitions Supervisor in Iraq, responsible for supervising the destruction of Iraqi munitions at an ordinance demolition site. Am. Compl. ¶¶ 19-22. Her position concerned munitions destruction – not invoicing the Government for services performed. There is no indication that she was involved in any way in the preparation or submission of any claims to the Government under the [Defendant's] contract with the Army. Nor is there any indication that she even had any knowledge or understanding of the claims submission process. Although her allegations fail to do so, even the suggestion that she investigated the submission of alleged false claims to the Government cannot be reconciled with the allegations that demonstrate that she had no involvement in the claims process, and is unable to identify a single allegedly false claim or a single person who was allegedly involved in the claims process. Simply stated, [Relator] was essentially performing her job when she requested and raised concerns regarding additional protective equipment for her staff. This is clearly not the same as

>     investigating fraud on or the submission of false
>     claims to the Government.

(Doc. # 33 at 10).

While Plaintiff's amended complaint contains a formulaic recitation of the elements of a FCA retaliation claims: she was "discriminated against in the terms and conditions of employment by her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a False Claims Act action under this section," a closer evaluation of the amended complaint reveals that her allegation is unsupported. (Doc. # 32 at ¶ 80). Her conduct (reading the applicable government contract and complaining to Defendant's employees that Defendant was not complying with some of its terms) was not "protected" but, rather, was unrelated to the submission of a false claim - the sine qua non of all FCA actions.[2]

---

[2] The Court agrees with Defendant's analysis that "to adopt [Relator's] misguided position – that a breach of any provision in a Government contract amounts to fraud on the Government, punishable under the FCA – is not only contrary to case law, but contrary to public policy. Allowing such a position would expose every Government contractor to nearly limitless litigation and strike suits. . . . The Government – the real party in interest to the contract – could have filed a breach of contract suit against [Defendant] if it felt that it had been wronged, but it did not; and it could have intervened in this case if it felt that it had been defrauded, but, again, it did not." (Doc. # 33 at 12).

This Court finds that Relator's complaint is fatally deficient because Relator did not, and cannot, allege that she engaged in protected activity under the FCA. Therefore, it is not necessary to delve into the other arguments presented, including arguments concerning the application of the FCA in foreign countries.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. Defendant USA Environmental, Inc.'s Motion to Dismiss the Amended Complaint (Doc. # 33) is **GRANTED**.
2. This case is **DISMISSED WITH PREJUDICE**.
3. The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 12th day of March, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:

All Counsel of Record